C. W. Miller vs. Green Bay, Winona & St. Paul Railroad Co.

Argued Oct. 9, 1894.    Affirmed Nov. 20, 1894.

No. 8603.

The grant of a right of way to a railroad gives it the right to allow other railroads to use it.

A railroad company acquiring a right of way acquires it for railroad purposes, in the manner and to the extent that rights of way are ordinarily used by railroad companies, and as the public interest may require. And as it is usual for railroad companies to let other companies into the common use of tracks, especially in cities and towns, for terminal purposes, and as the public interest requires that they may do so, in order to avoid unnecessary multiplication of tracks, the doing so does not impose an additional burden, entitling the owner of the land to further compensation.

Appeal by plaintiff, C. W. Miller, from a judgment of the District Court of Winona County, *Chas. M. Start*, J., entered March 7, 1893, dismissing the action on its merits.

The Chicago, Burlington and Northern Railroad Company acquired a right of way September 26, 1889, for its railroad track along the center of Second Street in Winona. Plaintiff owned and occupied lot six (6) in block ten (10) of Laird & Hamilton's Addition. It fronted upon Second Street and was his homestead. Plaintiff and wife granted to the railroad company the right to so use the street for its track. On July 15, 1891, the Chicago Burlington and Northern Railroad Company entered into a contract with the defendant, the Green Bay Winona and St. Paul Railroad Company authorizing it to use for one year then next ensuing this railroad track in common with itself. Plaintiff, claiming this use of the track by the defendant to be an additional servitude unwarranted by his grant to the Chicago Burlington and Northern Railroad Company, brought this action to recover $500 damages to his property by the additional obstruction of light, air and access. Defendant claimed and the court found that this additional use of the track was impliedly granted by the deed of plaintiff and wife to the Chicago Burlington and Northern Railroad Company. Defendant appeals.

*Tawney, Smith and Tawney,* for appellant.

The right conveyed by the deed of plaintiff and wife to the Chicago, Burlington and Northern Railroad Company is limited to the maintenance and operation of the Burlington railroad, and the damages released and discharged are those caused by the maintenance and operation of that road.    The only railroad company having the right to maintain and operate its road upon the track in front of plaintiff's premises without further compensation to plaintiff, is the Burlington or a railroad company that stands in its place and has succeeded to all its rights, franchises and privileges. *Donisthorpe* v. *Fremont, E. & M. V. R. Co.,* 30 Neb. 142; *Gratz* v. *Pennsylvania R. Co.,* 41 Pa. St. 447; *Hight* v. *Sackett,* 34 N. Y. 447.

If it is held that this deed of release as drawn has the same effect as a condemnation proceeding and the assessment and payment of damages under the statute, then plaintiff contends that in such proceeding and for the same damages the Burlington Company could not secure the right to invite and permit as many independent railroad companies operated under separate charters to use that track as it saw fit, and thus virtually destroy plaintiff's property.    *Fort Worth & R. G. Ry. Co.* v. *Jennings,* 76 Tex. 373; *Southern Pac. R. Co.* v. *Reed,* 41 Cal. 256; *Maltman* v. *Chicago M. & St. P. Ry. Co.,* 41 Ill. App. 229; *Payne* v. *Kansas & A. Val. R. Co.,* 46 Fed. Rep. 547.

The right obtained by condemnation is the right to use the property for the purposes disclosed in the petition asking for condemnation.    That purpose is to construct, maintain and operate its railroad in the usual and ordinary way for the transaction of its own business.    The statute requires a full and complete description of the purposes for which the property is sought to be taken.    It is safe to say that there has never been a petition filed in condemnation proceedings in this state that sought the right to use the property for the operation of the road of the petitioner, and also the right to share that use with other railroad companies. *Heck* v. *School District,* 49 Mich. 551; *Darlington* v. *United States,* 82 Pa. St. 382; *Williams* v. *Hartford & N. H. R. Co.,* 13 Conn. 397.

Proceedings under the statute to condemn property for one railroad company cannot be made to cover damages caused by the

operation of another and different railroad. Damages assessed on one basis, or upon the basis that the property is to be used by one railroad company, cannot be made to embrace injuries to the property caused by the operation of another and different railroad, or possibly a half dozen different roads. The description in the petition of the use to which it is proposed to subject the property, viz., the operation of the road seeking to take the land, is part of a pleading and should be construed like other pleadings, most strongly against the pleader.

It is upon this principle that the courts have uniformly held that a mere change in the grade of a railroad that causes additional damages is a ground for recovery of such damages. Mills, Em. Dom. § 219; *McCormick* v. *Kansas City R. Co.,* 57 Mo. 433; *Kansas City & E. R. Co.* v. *Kregelo,* 32 Kan. 608; *Hill* v. *Mohawk & H. R. Co.,* 7 N. Y. 152; *Wabash St. L. & P. Ry. Co.* v. *McDougall,* 118 Ill. 229, 126 Ill. 111; *Boyd* v. *Negley,* 53 Pa. St. 387; *Carpenter* v. *Easton R. Co.,* 26 N. J. Eq. 168.

If then upon principle and authority a recovery may be had for damages caused by a change in the plan of construction, on what principle can a recovery of damages be denied when such damages are caused by a change in the plan of operation with respect to which the damages were originally assessed?

*Greene & Vroman,* for respondent.

A conveyance and release like the one made by plaintiff has precisely the same force and effect upon the rights of the parties as a conveyance and assessment under the statute; one is a voluntary conveyance for a public use, and the other is a statutory conveyance for such use. The effect of both is the same as to all questions of past present and future damages. The rights of the parties in either case, and in all respects, are to be measured and determined by the same rules. Lewis, Em. Dom. §§ 293, 294; *Chicago, R. I. & P. Ry. Co.* v. *Smith,* 111 Ill. 363; *Norris* v. *Vermont Cent. Ry. Co.,* 28 Vt. 99; *Conwell* v. *Springfield & N. W. Ry. Co.,* 81 Ill. 232; *McCarty* v. *St. Paul, M. & M. Ry. Co.,* 31 Minn. 278.

The rule is general that in condemnation proceedings the damages are to be assessed once for all, and when once assessed they

include all the injuries resulting, for all time to come, from the particular appropriation, and from the construction and operation of the road in a reasonable and proper manner. *Van Schoick* v. *Delaware & R. C. Co.*, 20 N. J. Law, 249; *Sabin* v. *Vermont Cent. Ry. Co.*, 25 Vt. 363; *Rockford, R. I. & St. L. Ry. Co.* v. *McKinley*, 64 Ill. 338; *Trenton W. P. Co.* v. *Chambers*, 13 N. J. Eq. 199; *McCarty* v. *St. Paul, M. & M. Ry. Co.*, 31 Minn. 278.

In arriving at the amount of plaintiff's damages the commissioners, or, as in this case, the parties, are presumed to have had in contemplation not only the damages arising from the construction of the road by the Burlington Company and the operation of its trains, and the noise, jar, dust, smoke and other disagreeable features attending such operation, but also all damages which might spring from the legitimate and proper exercise of all rights, powers and privileges in respect to the right of way, whatever they may be, then possessed by the Burlington Company under the law. *Pontiac* v. *Carter*, 32 Mich. 164; *Bailey* v. *Woburn*, 126 Mass. 416; *Barnes* v. *Michigan Air Line Ry. Co.*, 65 Mich. 251; *Western U. Tel. Co.* v. *Rich*, 19 Kan. 517.

Among the rights thus possessed is the right to mortgage, sell or lease its track and property in whole or in part to be used exclusively by the grantee or lessee, or in conjunction with the grantor or lessor. Nor is the exercise of this right limited to one grantee or lessee, but may be extended to several, who may use the tracks and property in common. *Chicago R. I. & P. Ry. Co.* v. *Smith*, 111 Ill. 363; *Minneapolis & St. L. Ry. Co.* v. *St. Paul, M. & M. Ry. Co.*, 35 Minn. 265.

The joint use of terminals by several railroad companies under leases is universal especially in the larger cities, and this right has never before been questioned, so far as we are able to discover. The exercise of it is important and valuable, not only to the company owning the terminal privileges, but also to the lessee companies, and for many and obvious reasons its exercise subserves the public interests in the highest degree. The decision of this court in *Pence* v. *St. Paul, M. & M. Ry. Co.*, 28 Minn. 488, is directly in line with our contention. See also *Barlow* v. *Chicago, R. I. & P. Ry. Co.*, 29 Ia. 276.

GILFILLAN, C. J.    September 26, 1889, the plaintiff and his wife, in consideration of $450, granted, by deed, to the Chicago, Burlington & Northern Railroad Company, "its successors and assigns, the right to build, maintain, and perpetually operate its railroad track or tracks and telegraph line, as now located, over, upon, and along Second street," in Winona, opposite a certain lot owned by them, and thereby "released and discharged said grantee, its successors and assigns, from any and all damages, special or otherwise, heretofore or hereafter sustained by said grantors by reason of the construction, maintenance, and operation of said railroad and telegraph line on said street opposite to the lands aforesaid."

In 1891 that company granted to the defendant the right to use, in common with itself, for one year, at an agreed rental, its tracks, depot, and warehouses in Winona; the former company to have the general control, management and supervision of such depot, tracks, railways, and appurtenances.    To recover damages for running its trains, under this arrangement, along Second street, in front of his lot, and interfering with his enjoyment of the lot, plaintiff brings this action.

It is manifest, the purpose of the grant from plaintiff to the Chicago, Burlington & Northern Company was to avoid condemnation proceedings to acquire the rights granted to it.    It must be taken to have vested those rights in the company as fully as it could have acquired them by condemnation.    It acquired the right, as against plaintiff, to lay and use the tracks, for railroad purposes (a public use), in the manner and to the extent that such tracks are ordinarily used by railroad companies, and as the public interest may require them to be used.    We need not say that in order to avoid unnecessary multiplication of tracks in cities and towns, especially of tracks leading to and from depots and warehouses, the public interest requires that railroad companies should have the right to let each other into the use of such tracks.    The joint use of such tracks has been customary.    We think it was in view of the public interest in such cases, and of such custom, that in Laws 1879, ch. 80, § 1, authorizing any railroad company to "acquire by purchase or condemnation all necessary roadways, spur and side tracks, rights of way, depot grounds, yards, grounds for machine shops, warehouses, elevators, depots, station houses," "as may be

necessary or convenient for the full enjoyment use and operation of its road," is the clause, "and may make with any railroad company such arrangement for the use of any portion of its tracks and road beds as it may deem necessary."

As the rights of the Chicago, Burlington & Northern were acquired subsequent to that act, the act might be taken as a measure, in respect to the point in controversy, of the rights thus acquired, and so to determine the case. *Pence* v. *St. Paul, M. & M. Ry. Co.*, 28 Minn. 488, (11 N. W. 80.)

But without regard to that act, or to the time when a railroad company may have acquired an unrestricted right of way, either by purchase or condemnation, the right was acquired for such use (for railroad purposes) as is customary, and as the public interest may at any time require during the continuance of the right. There are probably instances where the amount of use of a right of way has increased twenty fold of what was anticipated at the time of acquiring the right. Such increase has usually been largely due to connections and consolidations for running of trains, bringing into continuous lines of great lengths, short lines; detached lines ending in the air; lines of only local benefit. The public policy of the state, as shown by its legislation, has always been to encourage such connections and consolidations, except of competing or parallel lines.

But when the right of way was acquired, whether by purchase or condemnation, it was acquired with reference to the business of conducting railroads, and to the manner in which that business is and always has been carried on. The increased use imposed no greater burden than was contemplated when the right of way was acquired. *Minneapolis & St. L. Ry. Co.* v. *St. Paul, M. & M. Ry. Co.*, 35 Minn. 265, (28 N. W. 705.)

The grant by plaintiff to the Chicago, Burlington & Northern must be held, in law, to have been in contemplation of the fact that railroad companies do, and that the public interests require that they may, let other companies into the use of their tracks, especially at terminals.

Judgment affirmed.

(Opinion published 60 N. W. 1006.)